UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SHELLY L. CHRISMAN,

    Plaintiff,

v.                                                                              Case No. 1:04-CV-509

RAPID-LINE, INC.                                                     HON. GORDON J. QUIST

    Defendant.

_____/

## OPINION

Plaintiff, Shelly L. Chrisman ("Chrisman"), has sued Defendant, Rapid-Line, Inc. ("Rapid-Line"), alleging that Rapid-Line violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 to 2654, by failing to reinstate her to her previous position or to an equivalent position in February 2004, following an extended medical leave for depression. Now before the Court is Rapid-Line's motion for summary judgment, in which Rapid-Line contends that it is entitled to judgment as a matter of law because Chrisman was unable to return to work after she had exhausted her twelve weeks of FMLA leave and, pursuant to Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775 (6th Cir. 1998), it had no obligation to reinstate Chrisman. For the reasons set forth below, the Court agrees and will grant Rapid-Line's motion for summary judgment.

## I. Facts

Rapid-Line is a sheet metal fabrication job shop. Chrisman was employed by Rapid-Line for approximately 18 years, beginning in 1985. At the time of the incidents relevant to this case, Chrisman was employed as a press operator on the second shift. On or about November 19, 1999,

Chrisman received a copy of Rapid-Line's employee handbook. (Chrisman Dep. at 23; Acknowledgment of Receipt, Chrisman Dep. Ex. 2.) The employee handbook sets forth Rapid-Line's FMLA policy, including rules for coordination of FMLA leave with other types of leave or time off and a definition of the eligibility year. For purposes of calculating FMLA leave, Rapid-Line has adopted a "rolling" year, which measures the 12-month FMLA period backward from the date the employee uses FMLA leave. (Employee Handbook at 24 ("The amount of FMLA leave available to an employee will be based on the 12-month period immediately preceding the date the employee uses any FMLA leave.")) See 29 C.F.R. § 825.200(b)(4) (describing a "rolling" year as an option that an employer may choose for calculating FMLA leave). When FMLA leave is used for a serious medical condition of the employee, sick pay, vacation pay, and personal day pay (in that order) is applied toward the exhaustion of the employee's FMLA Leave. (Employee Handbook at 23.) Thus, "[a]ll time off work which meets the definitions under FMLA [is] charged against the yearly FMLA allowance." (Id.)

During 2003, Chrisman was absent from work on a significant number of days for various medical reasons. The evidence in the record shows that Chrisman missed approximately 100 full and partial days of work. (Chrisman Vacation & Personal Hours Report ("Vacation Report"), Lindquist Dep. Ex. 3; Chrisman Absenteeism Report ("Absenteeism Report"), Lindquist Dep. Ex. 4.) Most, if not all, of Chrisman's unpaid time off was for sick time excused by a doctor. (Chrisman Dep. at 41.)

Chrisman missed work during the week of February 10, 2003, through February 14, 2003. (Vacation Report; Absenteeism Report.) This absence was due to Chrisman's endometriosis, which causes her to suffer cramps and "get real sick." (Chrisman Dep. at 35-36; .) Chrisman saw her

2

doctor for this condition on February 12, 2003. (2/2/03 Examination Notes, attached to Bernard Aff.) Chrisman testified that the cramping interfered with her work because she had to stand most of the time to perform her job. (Chrisman Dep. at 36.)

Chrisman also missed most of the work days from April 7, 2003, to April 25, 2003, due to a serious bladder and kidney infection.[1] (Id. at 36-37; Absenteeism Report) Chrisman's doctor excused her from work during that time. (Chrisman Dep. at 37.) Chrisman provided Rapid-Line a Disability Certificate signed by her doctor, which indicated that Chrisman was totally incapacitated during part of this time (from April 9, 2003, to April 14, 2003). (Id.; Disability Certificate, Chrisman Dep. Ex. 4.) In addition, Chrisman filed a claim for short term disability benefits. The application, signed by both Chrisman and her doctor, stated that Chrisman was disabled from April 7, 2003, through April 28, 2003. (Chrisman Dep. at 37-38; Disability Claim Form, Chrisman Dep. Ex. 5.)

In September 2003, Chrisman was off work for approximately three days for cardiac testing and treatment for heart palpitations. (Absenteeism Report; 9/9/03, 9/16/03, 9/22/03, and 9/23/03, Examination Notes.)

On October 9, 2003, Chrisman's brother, Michael Chrisman, who was also a Rapid-Line employee, suffered a stroke. He died two days later. As a result of Michael's death, Chrisman became clinically depressed. Initially, Chrisman's doctor certified that Chrisman was unable to work from October 10, 2003, to November 10, 2003, due to "acute depressive episode." (Chrisman Dep. at 81; FMLA Certification, Chrisman Dep. Ex. 16.) Subsequently, Chrisman's doctor extended Chrisman's return-to-work date four times, the last date being January 2, 2004. (Chrisman Dep. at

---

[1]Chrisman missed full days on April 7 and 8 and from April 15 to April 25. Chrisman worked 1.6 hours, 1.3 hours, 4 hours, and 4.75 hours on April 9-11 and 14, respectively. (Absenteeism Report.)

80-82; 11/6/03, 11/13/03, 11/21/03, and 12/2/03, Excuse Slips, Chrisman Dep. Exs. 13-17.) However, Chrisman testified that February 9, 2004, was the first day that she was medically released to return to work. (Chrisman Dep. at 88-89.) On December 15, 2003, Rapid-Line terminated Chrisman's employment for excessive absences from work.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

The FMLA provides eligible employees with a maximum of twelve weeks of unpaid leave in a given twelve month period to attend to certain family and medical matters. 29 U.S.C. § 2612(a). Leave may be taken for specified reasons, including medical reasons, childbirth or adoption, or for the care of a spouse, parent, or child who suffers from a serious health condition. Id. Upon return from FMLA leave, an employer must restore an employee to his or her former job or another position with equivalent pay, benefits, and conditions of employment. 29 U.S.C. § 2614(a)(1). In Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775 (6th Cir. 1998), the Sixth Circuit held

that an employer does not violate the FMLA by terminating an employee, even prior to the end of the statutory twelve-week leave period, if the employee "was clearly unable to return to work within the period provided by the FMLA." Id. at 785. The employee in Cehrs initially gave her employer a medical leave of absence form indicating that the employee was unable to work commencing on November 22, 1993. The form did not include an anticipated return date. Subsequently, the employee's doctor advised the employer of a tentative return to work date of January 20, 1994. Ultimately, the employee's doctor extended the leave to March 1, 1994, when the employee could begin working on a part-time basis. The employer eventually terminated the employee. Even though the employee claimed that the termination occurred prior to the end of the twelve-month period, the Sixth Circuit agreed with the district court that the employer was entitled to summary judgment because there was no dispute that as of February 12, 1994 – the date the employee's FMLA leave would have ended – the employee was still unable to return to work. Id. at 784-85.

      Rapid-Line argues that it is entitled to summary judgment because as of December 15, 2003, when it terminated Chrisman, Chrisman had used up all twelve weeks of her FMLA leave and she was unable to return to work. Rapid-Line further argues that, as in Cehrs, it is entitled to summary judgment even if Chrisman had not exhausted her twelve weeks of FMLA leave as of December 15, 2003, because Chrisman admits that she was not released to return to work until February 9, 2004 – well beyond the end of Chrisman's FMLA leave. Chrisman argues that Rapid-Line's motion must be denied because Rapid Line's own records show that as of December 15, 2003, when Chrisman was discharged, Chrisman had exhausted only ten weeks of unpaid leave. Chrisman asserts that Cehrs has no application in this case because the plaintiff in Cehrs was terminated following the end of the FMLA period. In addition, Chrisman argues that Rapid-Line was aware that Chrisman was

5

released to return to work on January 2, 2004, which would have been within the period of Chrisman's FMLA leave.

Rapid-Line is entitled to summary judgment because it has properly shown that as of December 15, 2003, Chrisman had exhausted her twelve weeks of FMLA leave and was unable to return to work. The twelve weeks includes, at a minimum: (1) one week in February 2003 relating to Chrisman's endometriosis; (2) two weeks, three days, 4.35 hours in April 2003; (3) two days, 6.65 hours in September; and (4) eight weeks between October 20, 2003, and December 12, 2003.[2] Chrisman does not argue or attempt to show that this time off was not FMLA-qualifying leave because it was not for a "serious health condition." See 29 U.S.C. § 2611(11). Instead, Chrisman argues that Rapid-Line's own documents show that as of September 25, 2003, Chrisman had used only eight days of medical leave, and, thus, she could not have used twelve weeks of FMLA leave by December 15. This argument fails because it relies solely upon Rapid-Line's internal accounting "codes" that are used solely for payroll purposes and do not necessarily relate to whether a particular absence was FMLA-qualifying leave. (Lindquist Dep. at 29-32.) As Kathy Lindquist explained, the particular codes are "for payroll and points" and are "not concerned about FMLA." (Id. at 32.) Moreover, Chrisman's argument ignores Rapid Line's evidence showing that Chrisman had more than eight hours of FMLA leave prior to September 25, 2003.

Chrisman also argues that paid vacation days, sick leave, and personal days (days on which she was excused) cannot be considered in determining how much FMLA leave time Chrisman used. This argument is contrary to both fact and law. Pursuant to Section 102(d)(2)(B), 29 U.S.C. § 2612(d)(2)(B), "an employer may require the employee, to substitute any of the accrued paid

---

[2] The eight weeks does not count the three bereavement days on October 15, 16, and 17.

6

vacation leave, personal leave, or medical or sick leave of the employee for leave" for a serious health condition. As noted above, pursuant to Rapid-Line's FMLA policy, when an employee uses FMLA leave for a serious health condition of the employee, Rapid-Line requires the employee to use paid leave (sick pay, vacation pay, and personal day pay) as FMLA leave. (Employee Handbook at 23.) Thus, Chrisman's argument that she never agreed to consider excused absence days or vacation days taken during the year as FMLA leave must be rejected, and Rapid-Line may properly count Chrisman's paid days as FMLA leave.[3] Citing Section 102(b)(1), 29 U.S.C. 2612(b)(1),[4] Chrisman also argues that Rapid-Line may not count every day of intermittent leave in calculating the twelve week period. This argument is based upon a misreading of Section 102(b)(1), which states that for leave taken for a serious health condition of the employee (Section 102(a)(1)(D)), "leave . . . may be taken intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. § 2612(b)(1). The preceding sentence of Section 102(b)(1), which requires the agreement of the employee and the employer, applies to leave taken under Section 102(a)(1)(A) and (B) for the birth of a child of the employee or the adoption of a child by the employee, but not to leave taken for a serious health condition of the employee.

---

[3] Chrisman does not argue, as she could have, that paid leave should not be counted as FMLA leave because Rapid-Line failed to notify her, as required by 29 C.F.R. § 825.208, that the paid leave would be considered FMLA leave. See Plant v. Morton Int'l, Inc., 212 F.3d 929, 935-36 (6th Cir. 2000). Following the Supreme Court's decision in Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 122 S. Ct. 1155 (2002), the validity of such an argument is highly questionable. Indeed, several district courts within the Sixth Circuit have questioned whether the Sixth Circuit's decision in Plant remains good law in light of the Supreme Court's holding in Ragsdale that 29 C.F.R. § 825.700(a) is invalid and have imposed a requirement that a plaintiff show some prejudice as a result of the employer's failure to designate leave as FMLA leave. See Donahoo v. Master Data Ctr., 282 F. Supp. 2d 540, 554-55 (E.D. Mich. 2003); Thompson v. Diocese of Saginaw, No. 02-10267-BC, 2004 WL 45519, at *6-7 (E.D. Mich. Jan. 6, 2004); Summers v. Middleton & Reutlinger, P.S.C., 214 F. Supp. 2d 751, 757 (W.D. Ky. 2002); Roberson v. Cendant Travel Servs., Inc., 252 F. Supp. 2d 573, 577 (M.D. Tenn. 2002).

[4] Chrisman incorrectly cites Section 102(a)(1)(b), which does not exist. Section 102(a)(1)(B), which does exist, permits leave for "the placement of a son or daughter with the employee for adoption or foster care." 29 U.S.C. § 2612(a)(1)(B).

Even if Chrisman had not used her twelve weeks of FMLA leave as of December 15, 2003, Rapid-Line would still be entitled to summary judgment because Chrisman could not have returned to work after twelve weeks of FMLA leave. Chrisman alleged in her complaint and testified under oath in her deposition that February 9, 2004, was the first day that she was medically released to return to work. (Compl. ¶ 22; Chrisman Dep. at 89.) According to Chrisman's own allegations and testimony, she could not have returned to work until after she had used her twelve weeks of FMLA leave. Therefore, pursuant to Cehrs, Rapid-Line is also entitled to summary judgment on the basis that Chrisman could not return to work at the conclusion of twelve weeks of FMLA leave.

In spite of her prior admissions, Chrisman attempts to avoid Cehrs by arguing that she could have returned to work by January 2, 2004, which, Chrisman argues, was within the FMLA twelve week period. Although there are several grounds to reject this argument, two will suffice. First, it is well established in the Sixth Circuit that a party may not create a genuine issue of material fact by filing an affidavit that contradicts her prior deposition testimony. See Reid v. Sears, Roebuck & Co., 790 F.2d 453 (6th Cir. 1986). Here, Chrisman has not even attempted to contradict her own prior testimony by affidavit, but instead relies upon unsupported factual assertions in her brief. Second, Chrisman's argument does not aid her cause because, based upon her own admission in her brief, the purported January 2, 2004, return date would still have been after Chrisman had exhausted her twelve weeks of FMLA leave. Chrisman concedes that as of December 15, 2003, she had exhausted ten weeks of unpaid leave. (Pl.'s Resp. Br. at 7.) Because January 2, 2004, was at the end of the third workweek following December 15, 2003, Chrisman would not have returned to work before the end of the twelve week period.

Finally, the Court notes that Chrisman's new theory is essentially that she was cleared to return to work on January 2, 2004, but that Rapid-Line's December 15, 2003, termination and

8

ancillary termination of health insurance[5] exacerbated her condition, thus leading to a later return date of February 9, 2004.  The court in Roberson v. Cendant Trave. Services, Inc., 252 F. Supp. 2d 573 (M.D. Tenn. 2002), rejected a similar argument on the ground that the FMLA merely permits an employee to take medical leave and does not make an employer liable for causing or contributing to an employee's serious health condition.  Id. at 581.  This Court agrees with that assessment.  Therefore, Chrisman's argument that Rapid-Line somehow exacerbated her health problems does not further her FMLA claim.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Rapid-Line's motion for summary judgment.

An Order consistent with this Opinion will be entered.


Dated:  June 21, 2005                            /s/ Gordon J. Quist
                                                 GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE

---

[5]Rapid-Line has shown that Chrisman did not actually learn of the termination of her insurance coverage until January 2004.